UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

MIA R.,[1]

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendants.

3:19-cv-46-JR

ORDER

Russo, Magistrate Judge:

Plaintiff brings this proceeding to obtain judicial review of the Commissioner's final decision denying plaintiff's application for disability insurance benefits. Plaintiff asserts disability beginning June 19, 2014, due to diabetes, high blood pressure, and neuropathy. Tr. 169, 186. After a hearing held on October 12, 2017, an Administrative Law Judge (ALJ) determined plaintiff was not disabled as of her date last insured (DLI), December 31, 2015. Tr. 25. Plaintiff contends

---

[1] In the interest of privacy, this Order uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Order uses the same designation for a non-governmental party's immediate family member.

Page 1 - ORDER

the ALJ erred by: (1) concluding plaintiff is capable of light exertion work; (2) discrediting plaintiff's symptom testimony; and (3) rejecting the opinion of plaintiff's treating neurologist.

A.     Residual Functional Capacity

Plaintiff argues the residual functional capacity (RFC) assessed by the ALJ is flawed because it assumes an ability to perform light work even though the ALJ accepted the opinion of consulting physician Dr. Robert Mitgang.

On February 21, 2016, Dr. Mitgang assessed plaintiff with the following exertional limitations:

- Occasionally (occasionally is cumulatively 1/3 or less of an 8-hour day) lift and/or carry (including upward pulling): 20 pounds;

- Stand and/or walk (with normal breaks) for a total of: 2 hours;

- Sit (with normal breaks) for a total of: More than 6 hours on a sustained basis in an 8-hour workday;

- Push and/or pull (including operation of hand and/or foot controls): Unlimited, other than shown, for lift and/or carry.

Tr. 87-88. Dr. Mitgang also noted postural limitations regarding climbing ramps, stairs, ropes, ladders, and scaffolds. Dr. Mitgang noted no limitations with respect to manipulations, vision, or communication. Tr. 88. Dr. Mitgang did note certain environmental limitations such as exposures to extreme heat and cold and hazards. Tr. 88-89. In explaining the RFC Dr. Mitgang also noted, "case written for Sedentary." Tr. 89.

The ALJ noted the specific functional limitations identified by Dr. Mitgang and gave the opinion great weight. Tr. 23.

The ALJ determined plaintiff had the RFC, through the DLI,

    to perform light work as defined in 20 § CFR 404.1567(b) **except** she could stand
    and walk 2 hours in an 8-hour workday; she could occasionally climb, stoop,

> crouch, kneel, crawl, and balance; she should avoid extremes of heat and cold; she should avoid concentrated exposure to hazards.

Tr. 20 (emphasis added). The ALJ queried a vocational expert (VE) if there were any jobs a person with such limitations could perform. The VE testified:

> Yes, there would be a number of occupations. First of all, in the -- in the light range, **even though it's categorized as light, these jobs that I testify to do allow for sit/stand and would allow -- be consistent with this two-hour limitation that you've indicated**. One of the occupations would be as an assembler of small products and this has a DOT of 739.687-030, this position is unskilled, SVP 2, exertionally in the light range. The estimate for the job numbers nationally, 35,600. Another occupation in the light range that'd be consistent with this two-hour standing would be as a packager, this has a DOT of 559.687-074, this position is unskilled, SVP 2, exertionally in the light range. The estimate for the job numbers nationally is 22,400. Those are two examples in the light range.

Tr. 57-58 (emphasis added). The ALJ relied on this opinion in finding plaintiff could perform other work in the national economy. Tr. 25. Plaintiff argues that because the ALJ failed to include a limitation of sedentary work, the ALJ could not appropriately rely on the VE's opinion.

The ALJ included the specific limitations noted by Dr. Mitgang which are consistent with a limited range of light work, but not the full range. See SSR 83-10 (defining the full range of sedentary, light, and medium work). Although Dr. Mitgang noted "case written for sedentary," the functional limitations he identified exceeded exertional limitations for strictly sedentary work. The VE considered those limitations that fell below light work when identifying the jobs a person with the limitations identified by Dr. Mitgang could perform. Cf. Barstad v. Chater, 76 F.3d 384 (9th Cir. 1996) (there will be instances where a claimant's residual functional capacity will not fit precisely within one of the exertional categories of work as defined by the regulations and an ALJ may rely on a vocational expert to identify jobs which are within the RFC, if they exist). Other than a general assertion that the ALJ should have limited plaintiff to sedentary work, plaintiff does not identify what specific functional limitation the ALJ should have included in the RFC from Dr.

Mitgang's opinion. Accordingly, the ALJ did not err in failing to limit plaintiff strictly to sedentary work or in relying on VE testimony reflecting available jobs for the limited range of light work supported by plaintiff's RFC.

B.      Symptom Testimony

Plaintiff testified that she was having three to five migraines a week as of January 9, 2013. Tr. 44, 49. Those episodes required "isolation," a need to lie down, and elimination of light and noise. Id. The ALJ rejected plaintiff's testimony to the extent it suggested an inability to work:

> ln terms of the claimant's migraine headaches, the evidence since the claimant's alleged disability onset date through the date last insured does not show any significant worsening of this impairment. For example, in 2012, prior to the alleged onset date, the claimant reported five migraines per week. However, she was able to work despite these migraines. She was taking Lortab. (See e.g., [Tr. 292, 295]). After the alleged onset date, the claimant described up to four migraines per week and that Hydrocodone relieved her pain symptoms. (See e.g., [Tr. 367, 388, 457, 505]). Additionally, according to progress notes, the claimant reported that her "main issue" was bilateral foot pain. ([Tr. 501]). A brain MRI after the date last insured was normal. ([Tr. 692]). Overall, the medical evidence related to the claimant's migraine headaches is inconsistent with the claimant's allegations of total disability and demonstrates that the claimant could perform work-related activities consistent with the residual functional capacity.

Tr. 22. Plaintiff's migraines date back to at least 2011. Tr. 452. The record shows that plaintiff engaged in work activity between 2011 and June 19, 2014, (Tr. 208). While plaintiff testified that her employers would accommodate her pain and allow her to leave early (Tr. 49), the record reflects that plaintiff worked eight hours per day five days per week from March 2014 to June 2014, ten or more hours per day five to six days per week from July 2012 to October 2012, six to eight hours per day four to six days per week from March 2012 to July 2012, and four to eight hours per day three to six days per week from November 2011 to March 2012 . See Tr. 208-212. There is substantial evidence in the record supporting the ALJ's finding that plaintiff was able to work despite the allegedly disabling migraines. The ALJ did not err with respect to his treatment

of plaintiff's migraine symptoms. See, e.g., Gregory v. Bowen, 844 F.2d 664, 667 (9th Cir. 1988) (in discounting plaintiff's ability to work, ALJ properly relied on plaintiff's actual continued work despite existence of allegedly disabling back problem).

C.    Treating Neurologist

Plaintiff's DLI was December 31, 2015. On February 11, 2016, plaintiff began treatment with her treating neurologist, Dr. Christopher Milford. On April 7, 2016, Dr. Milford completed a form checking a box indicating plaintiff "is unable to work **at this time**." Tr. 519 (emphasis added). Dr. Milford also checked boxes indicating plaintiff has "problems stooping or bending," "balance issues," "memory loss," and would have "3 or more sick days per month." Tr. 519. Dr. Milford explained that plaintiff,

> has disabling episodes of vertigo that make her bed ridden, she has multiple spine issues with resulting radiculopathy and neuropathy that make it difficult to sit and stand for extended periods. She is a fall risk. She is unable to execute fine motor tasks with her hands **at this time**.

Tr. 519 (emphasis added).

The ALJ rejected this opinion in part because Dr. Milford's opinion came after plaintiff's DLI. Tr. 23. In addition, Dr. Milford does not offer a retrospective opinion and indeed notes that plaintiff is "unable to work at this time." Because the opinion does not address the relevant time period, the ALJ appropriately rejected it. See, e.g., Capobres v. Astrue, 2011 WL 1114256, at *5 (D.Ida. Mar. 25, 2011) (explaining that while post-DLI medical evidence cannot be rejected solely as remote in time, it can be rejected on the grounds that the evidence itself is not retrospective).

## CONCLUSION

Pursuant to Sentence 4 of 42 U.S.C. § 405(g), the decision of the Commissioner is affirmed, and this action is dismissed.

DATED this 21st day of October, 2019.

    /s/ Jolie A. Russo
JOLIE A. RUSSO
United States Magistrate Judge